UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE GABB,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>QUANG TRAN, MARK LITHERLAND,<br>STEPHANIE MILLS, AMY ABELL, and<br>WEXFORD HEALTH SOURCES, INC.<br><br>　　　　Defendants. | Case No. 20-cv-90-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 49) of Magistrate Judge Gilbert C. Sison recommending that the Court deny the motion for summary judgment on Count 1 filed by defendants Mark Litherland and Stephanie Mills because they have not demonstrated that plaintiff Tyrone Gabb failed to exhaust his administrative remedies before filing this lawsuit (Doc. 31). Litherland and Mills have objected to the Report (Doc. 51).

**I.    Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    Background**

This matter arose after Gabb sought dental treatment for a fractured tooth in April 2019,

while he was an inmate at Lawrence Correctional Center ("Lawrence CC").  Dr. Tran and Dr. Litherland were dentists employed by defendant Wexford Health Sources, Inc. to serve inmates Lawrence CC at that time.  After months of waiting in pain for proper dental care to restore his tooth, Tran's tooth was extracted instead.  He believes that in delaying his care and not treating his pain during the delay, dental staff at Lawrence CC were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Gabb first sought treatment for his tooth in April 2019.  On May 1, 2019, Dr. Tran recommended tooth restoration (a filling, in layman's terms) but told Gabb he would have to wait months for the procedure because there was a long list of inmates waiting for fillings.  Dr. Tran placed Gabb in the operative procedure line but refused to prescribe pain medication during the delay.  On May 6, 2019, dental assistant Mills took an x-ray of Gabb's tooth.  Gabb filed a grievance on May 21, 2019, complaining about the delay in treatment he attributed to the "health care dental department."

Dr. Litherland saw Gabb for the first time on August 13, 2019, with Mills present.  Dr. Litherland concurred with Dr. Tran's assessment, and confirmed that Gabb was already on the list for a filling to restore his cracked tooth.  Dr. Litherland prescribed ibuprofen for Gabb's pain during the wait.

Dr. Tran saw Gabb again on August 23, 2019, and told him the line for fillings was much longer than the line for tooth extractions.  Faced with another painful delay, Gabb agreed to have his tooth extracted.  Dr. Litherland extract his tooth on August 30, 2019.

**III.    The Report and Objections**

Magistrate Judge Sison issued the Report after holding an evidentiary hearing on the motion pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).  In the Report, Magistrate

Judge Sison noted that Gabb had only filed a single grievance regarding his dental treatment—his May 21, 2019, grievance—which was before he ever saw Dr. Litherland. That grievance complained about the delay before his first request for dental care and his dental exam by Dr. Tran and the failure to provide him speedy treatment of his tooth or pain medication thereafter. The grievance named or described Dr. Tran, his dental assistant, and Wexford Health Sources, Inc., but it did not name or expressly describe Litherland or Mills. All parties agree that Gabb pursued his grievance through the final step of the grievance procedure. They argue whether that grievance addressed his claims against Dr. Litherland and Mills.

Magistrate Judge Sison noted that the Lawrence dental department was small, consisting only of Drs. Trans and Litherland, dental assistants Abell and Mills, and one dental hygienist. He further found that Gabb's grievance regarding the failure of the "health care dental department" as a whole to respond promptly to his April requests for treatment was sufficient to alert prison officials to the lack of response by the entire department, including Dr. Litherland and Mills. Magistrate Judge Sison further found the "continuing violation" theory applied because Gabb's grievance complained of an ongoing delay in treatment, and he was not required to grieve every new delay.

Dr. Litherland and Mills object to the finding that the continuing violation theory applies and to the finding that they were properly identified by naming the "health care dental department." They noted that Dr. Litherland did not even see Gabb as a patient until after Gabb's sole grievance.

**IV.   Analysis**

To determine which claims against which defendants were exhausted with respect to this particular claim, the Court looks to the purpose of the exhaustion requirement:   "alerting the

3

state and inviting corrective action." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Its purpose is not to give early notice to potential individual defendants. *Id.*

Here, Gabb's grievance clearly alerted prison officials to delays in dental treatment that are arguably in violation of Wexford's duties to provide emergency dental services and Gabb's constitutional rights. Gabb named the "health care dental department" which, at that time, included all four individual defendants (plus another person not named in the suit). Lawrence CC officials were likely able to determine who was responsible for delays in the small department and to seek to remedy any inordinate delays in treatment. Thus, the grievance served its main purpose of alerting prison officials to a problem and giving them an opportunity to fix it. As such, the grievance served to exhaust Gabb's remedies regarding his complaints of undue delay.

Dr. Litherland and Mills have not shown that the "continuing violation" theory would not bring their conduct within the scope of Gabb's grievance. To the extent either might have been responsible for the initial delay—or might have been available to remedy the delay—the continuing delay was part of the same wrong. It would have been pointless to require Gabb to file a new grievance for each day he remained untreated or each time he was seen by different medical personnel, as least as long as he continued to complain about *inaction* rather than any particular *action* an individual took against him. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Dr. Litherland's and Mills's inaction was the same continuing violation as the inaction of Dr. Tran, Abell, and any other person who might have been responsible for the initial delay in examining Gabb.

4

This might not have been the case had Dr. Litherland or Mills joined the Lawrence CC dental staff *after* Gabb's grievance, similar to the situation in *Barrow v. Wexford Health Sources, Inc.*, 793 F. App'x 420 (7th Cir. 2019).  There, a new medical director began working at the prison eight months after the inmate filed his grievance, so the grievance could not possibly have been complaining of the new medical director's conduct.  *Id.* at 423.  Dr. Litherland and Mills have not provided any evidence that they were late to the party—that is, that they were not part of the "health care dental department" when Gabb's delay in treatment first began—so a general grievance against their very small department over a continuing delay in treatment is sufficient to exhaust claims against them for the delay.

The Court also distinguishes *Reed v. Larson*, No. 18-cv-1182-JPG, 2019 WL 6769319 (S.D. Ill. Dec. 12, 2019).  There, an inmate filed grievances about a lack of medical treatment *before* he saw a defendant doctor for the first time.  *Id.* at *1.  Then he filed suit about the quality of the doctor's treatment.  He argued that the continuing violation doctrine meant that any post-grievance conduct relating to his medical problem was part of the continuing violation he properly grieved before his first doctor visit.  *Id.* at *2.  The Court found the inmate's first grievance was not so much about a delay in treatment as the policy requiring the inmate to pay a $5.00 copay before a medical appointment.  *Id.* at *3.  The second grievance complained about a specific nurse's conduct.  *Id.*  The inmate's lawsuit, in contrast, complained about the quality of the doctor's post-grievance treatment, not a general delay in receiving medical attention.  *Id.* The Court concluded that the continuing violation doctrine did not apply to bring the doctor's conduct within the scope of the inmate's grievances because the grievances were about matters that did not involve the doctor—a copay policy and a nurse's conduct.  *Id.*

The Court's holding today does not foreclose Dr. Litherland or Mills from seeking

5

summary judgment on the merits by arguing Gabb lacks proof they were aware of or deliberately indifferent to his serious need for dental treatment. But they are not entitled to summary judgment based on the failure to exhaust administrative remedies.

## V.     Conclusion

The Court, having considered the summary judgment motion *de novo*, hereby:

- **ADOPTS** the Report in its entirety (Doc. 49);

- **DENIES** Dr. Litherland's and Mills's motion for summary judgment based on the failure to exhaust (Doc. 31); and

- **DENIES** Gabb's motion for status in light of this order (Doc. 52).

**IT IS SO ORDERED.**
**DATED:   February 1, 2022**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**