UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE GABB,<br><br>  Plaintiff,<br><br>  v.<br><br>QUANG TRAN, MARK LITHERLAND, STEPHANIE MILLS, AMY ABELL, and WEXFORD HEALTH SOURCES, INC.<br><br>  Defendants. | Case No. 20-cv-90-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the defendants' motion for summary judgment (Docs. 80 & 81). Plaintiff Tyrone Gabb has responded to the motion (Docs. 93 & 94), and the defendants have replied to that response (Docs. 95 & 96).[1]

**I.  Background**

This matter arose after Gabb sought dental treatment for a fractured tooth in April 2019, while he was an inmate at Lawrence Correctional Center ("Lawrence CC"). Dr. Tran and Dr. Litherland were dentists employed by defendant Wexford Health Sources, Inc. ("Wexford") to serve inmates at Lawrence CC. After months of waiting in pain for proper dental care to restore his fractured tooth, Gabb's tooth was extracted instead. He believes that in delaying his care and not treating his pain during the delay, dental staff at Lawrence CC, as well as Wexford itself, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

---

[1] The defendant's reply exceeds the five-page limit set forth in Local Rule 7.1(c) without permission of the Court—an eight-page brief coupled with a four-page supplement. It does not need those extra pages because it repeats the same arguments—often almost verbatim—time after time. Accordingly, the Court has disregarded all but the first five pages of the reply brief, those authorized by the rule.

## II. Summary Judgment Standard

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Hansen v. Fincantieri Marine Grp.*, 763 F.3d 832, 836 (7th Cir. 2014).

Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotations omitted). The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836 (internal quotations omitted). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (internal quotations omitted).

## III. Relevant Facts

Viewing the evidence and drawing all reasonable inferences in favor of Gabb, the evidence in the file establishes the following relevant facts for the purposes of this motion.

A.      Dental Care at Lawrence CC

This case involves the dental care provided at Lawrence CC in 2019. Defendant Dr. Mark Litherland was the regular dentist at Lawrence CC. When Dr. Litherland took extended personal leave beginning in April 2019, Lawrence CC used defendant Dr. Quang Tran, also a dentist, to help cover for Dr. Litherland while he was out. Dr. Tran began work at the facility in May 2019, but he was not at the facility every day. Dr. Litherland and Dr. Tran were assisted by defendants Amy Abell and Stephanie Mills, both dental assistants. During Dr. Litherland's absence and before Dr. Tran began coverage, the plan in place was that if an inmate had an emergent dental problem, dental staff would send him to the medical department for further evaluation to see if they could help him, and if they could not, to send him for outside dental care. Lawrence CC did not directly employ the four individual defendants but contracted with an outside health care agency that employed them—Wexford.

The contract for Wexford to provide dental services to Lawrence included the promise that Wexford would respond to dental emergencies within 24 hours and would treat within three days painful cavities that hindered an inmate's ability to eat. Pl.'s Resp. to Mot. Summ. J., Ex. A, Contract § 2.2.6.2 (Doc. 93-1 at 4). It does not specifically say anything about fractured teeth.

Illinois Administrative Directives also guide the provision of dental services to inmates. The relevant Directive provides that an offender who has a dental emergency "as defined by the facility dentist" must be examined no later than the day after the emergency occurs. Pl.'s Resp. to Mot. Summ. J., Ex. D, IDOC Administrative Directive 04.03.102, Dental Care for Offenders § II.F.7 (effective 1/1/2020) (Doc. 94 at 4). The Directive further provides a guide from the American Public Health Association ("APHA") for facility dentists to prioritize and treat oral

conditions. *Id.*, Attachment A (Doc. 94 at 6). The guide classifies conditions into six categories, with Category I containing conditions requiring emergency treatment down to Category VI for asymptomatic patients in no apparent need of treatment. "Fracture of teeth (also see 3.c.)" is in Category I, and "Class II, Class III, or Class IV fracture anterior tooth or teeth" is in Category III. Anterior teeth are those in the front of the mouth. American Dental Association, Glossary of Dental Clinical Terms, Anterior, available at https://www.ada.org/ publications/cdt/glossary-of-dental-clinical-terms#universal (visited Sept. 15, 2023).

B.   Gabb's Dental Care

Gabb fractured one of his teeth on April 7, 2019, which caused him severe pain. Immediately, he began filing requests to see a dentist. He got a response on April 15, 2019, confirming that he was on the list to see the dentist and that the dentist would see him when his name reached the top of the list. Gabb speculates that since the dental department was so small, everyone in it must have known of his requests.

He first saw a dentist on May 1, 2019, when he saw Dr. Tran. Abell was present as well. Dr. Tran diagnosed Gabb with a distobuccal cusp fracture of tooth # 15, the second molar on the upper left side. American Dental Association, Universal Tooth Designation System, Version 1 (Aug. 2022), available at https://www.ada.org/-/media/ project/ada-organization/ada/ada-org/ files/publications/cdt/ ada_utds_value_ set_v1_2022_aug.pdf (visited Sept. 15, 2023). Dr. Tran saw from Gabb's dental records that the distobuccal enamel of tooth #15 had been repaired a little more a year before, in March 2018. He noted that Gabb's new fracture did not expose the pulp chamber of the tooth but only the dentin layer and did not access the root structure or the nerves. He assessed the fracture as superficial and minor because the kind of fracture Gabb had rarely damaged the tooth's pulp. It might lead to sensitivity to hot and cold, but in Dr. Tran's

4

opinion it was not an emergency.

Dr. Tran ordered an x-ray of Gabb's tooth and put him on the list for restoration by an outside dentist.  He estimated it would take three months for Gabb to get to the top of the list of inmates waiting for treatment from outside dentists.  Although Gabb reported the tooth was causing him severe pain and difficulty eating, Dr. Tran did not prescribe any additional pain medication beyond the ibuprofen that Gabb was already taking and that had already been prescribed by a different health care provider through July.  Abell did not object or report Dr. Tran to an administrator.  In Dr. Tran's opinion, the x-ray taken on May 6, 2019, by Mills confirmed that Gabb's fracture was superficial with no infection or root/nerve involvement.  In sum, based on his examination of Gabb's tooth and the x-ray, Dr. Tran did not think Gabb's condition was an emergency.  Gabb continued to suffer severe pain because of his tooth and to file grievances about it.

About three months later, around the time Gabb expected to be on top of the list for an outside restoration, he again asked to see the dentist and was brought to Dr. Litherland on August 13, 2019.  Mills and Abell were present as well and heard the interactions between Gabb and Dr. Litherland.  Gabb continued to complain of pain, and Dr. Litherland told Gabb that a restoration could be attempted.  He also told Gabb that if he continued to complain about his pain and lack of treatment, his tooth would not get restored but Dr. Litherland would pull it instead.  Mills heard this threat, agreed with it, and failed to object or report it.  Dr. Litherland prescribed Gabb ibuprofen in light of the fact that his ibuprofen prescription had expired.

Gabb asked to see the dentist again a short while later, and was brought to see Dr. Tran on August 23, 2019.  Mills was present as well.  Dr. Tran told Gabb his tooth was still repairable, but it that it would now take an additional four months for Gabb to reach the top of

5

the waiting list to see an outside dentist but that his tooth could be extracted far more quickly. Mills did not object or report Dr. Tran to any administrator. In light of the pain he had suffered since his tooth was fractured, Gabb decided to have it extracted rather than wait four more months in pain for a restoration. On August 30, 2019, Gabb signed a consent for dental treatment to extract the problematic tooth because he was unable to get the restoration he needed. Dr. Litherland extracted the tooth and prescribed ibuprofen for pain. Abell was present for the extraction. Even after the extraction, Gabb continued to suffer some pain.

    C.    Litigation

In January 2020, Gabb filed a *pro se* Complaint asserting what the Court later identified as these claims:

> **Count 1:**    Eighth Amendment deliberate indifference claim against Defendants Tran, Litherland, Abell, and Mills for failing to treat Plaintiff's fractured tooth and his related pain from April 7, 2019, until August 30, 2019, resulting in significant pain and extraction of his restorable tooth.
>
> **Count 2:**    Eighth Amendment deliberate indifference claim against Wexford Health Sources for its unconstitutional policy or practice of delaying treatment.

(Doc. 11).

The defendants filed a summary judgment motion in March 2023 arguing that, individually, they were not deliberately indifferent to Gabb's dental needs. They further argue that no evidence shows Wexford had a policy, practice, or custom of delaying dental treatment or of instructing dentists to extract teeth rather than order that they be repaired.

**IV.**    **Analysis**

    A.    Individual Defendants

The Eighth Amendment prohibits the cruel and unusual punishment of prisoners. U.S.

Const., amend. VIII. Gabb asserts that Dr. Tran, Dr. Litherland, Abell, and Mills each violated the Eighth Amendment when they delayed or denied treatment for his fractured tooth and caused him to suffer unnecessary and prolonged pain between April 7, 2019, and August 30, 2019. To prevail on such an Eighth Amendment claim against a defendant, a prisoner must show (1) that he had an objectively serious medical need and (2) that the official knew that the medical need was serious but was deliberately indifferent to it. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006); *see Burton v Downey*, 805 F.3d 776, 784 (7th Cir. 2015).

An official is deliberately indifferent if he actually "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson*, 444 F.3d at 585. To show a defendant was deliberately indifferent, the plaintiff does not need to show the defendant intended harm or believed it would occur, but he must show more than mere negligence. *Petties*, 836 F.3d at 728 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

"Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." *Chapman v. Keltner*, 241 F.3d 842, 845-46 (7th Cir. 2001) (citing *Estelle*, 429 U.S. at 104-05). It can also arise where a treatment decision was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (treatment that is "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment"); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

No party seriously challenges that Gabb's condition amounted to a serious medical need. They instead focus on whether each individual defendant was deliberately indifferent to that need.

    1.    <u>Dr. Tran</u>

As a preliminary matter, no evidence suggests Dr. Tran played any role in the failure to schedule a dentist appointment until several weeks after Gabb's injury. In fact, he saw Gabb on the first day he served the inmates at Lawrence CC. No jury could find him responsible for such a delay in getting a dental appointment before he even started working at the facility.

Dr. Tran saw Gabb on two occasions: May 1, 2019, and August 23, 2019. At the first visit, Dr. Tran assessed Gabb as having a distobuccal cusp fracture of tooth # 15, one of his back molars, that did not penetrate to the pulp or nerve of the tooth but that penetrated only to the dentin layer. Dr. Tran placed Gabb on the waiting list for restoration of his tooth and ordered an x-ray. The x-ray, performed on May 6, 2019, confirmed Dr. Tran's assessment that the fracture was superficial and minor. Dr. Tran was aware that Gabb was in pain, but he saw that he was already prescribed ibuprofen, so he did not order anything else. While another doctor might have prescribed a separate or different pain medication, there is no evidence Dr. Tran's decision was so far afield of professional medical standards that it calls into question Dr. Tran's medical judgment. In his medical opinion, Gabb's tooth was not an emergency even though it was causing him pain, and ibuprofen was the proper treatment for his pain.

On August 23, 2019, Dr. Tran considered Gabb's pain and the length of the list of inmates waiting to see the dentist and offered Gabb a quicker way to relieve his pain—tooth extraction.

Dr. Tran's assessment is not inconsistent with IDOC's contract with Wexford or with the

applicable IDOC Administrative Directive, which might have suggested "blatantly inappropriate" treatment. Wexford promised IDOC that it would treat dental emergencies within 24 hours, but Dr. Tran found this was not an emergency.[2] It also promised to treat painful cavities that impaired eating within three days. This promise is inapplicable because Gabb did not have a painful cavity.

As for Administrative Directive 04.03.102, it allowed the facility dentist—Dr. Tran at the time—to define "dental emergency," and Dr. Tran did not think Gabb had one. Consequently, the Administrative Directive did not require an examination the day after the "emergency" occurred.[3] And Dr. Tran's assessment of Gabb's condition as non-emergent was not inconsistent with the APHA guidelines meant to help guide a facility dentist's discretion. Those guidelines classify as an emergency "fracture of teeth" but also recognize in paragraph 3.c, that some tooth fractures are not emergencies. Dr. Tran examined Gabb's mouth and consulted x-rays to determine that his tooth fracture was minor and superficial, not deep and to the heart of the tooth, and not an emergency.

In sum, no reasonable jury could find Dr. Tran was deliberately indifferent to Gabb's serious medical needs. He diagnosed a non-emergent tooth fracture, ordered an x-ray, and placed Gabb on the list for tooth restoration. He considered Gabb's pain but declined to order pain medication because Gabb already had a prescription for ibuprofen from a medical provider. Later, when Dr. Tran became aware that the wait for restoration services was growing, not shrinking, he offered Gabb an option to reduce his pain more quickly through extraction. No

---

[2] This is fortuitous, for if Gabb's April 7, 2019, problem *had* been an emergency, no one would have known that within 24 hours of when he fractured his tooth. Consequently, there could have been no response within 24 hours.
[3] Again, had Gabb had an emergent condition, no one would have known about it until long after the examination called for might have occurred.

reasonable jury could find that Dr. Tran was deliberately indifferent to Gabb's serious dental needs, including his pain.

One more point deserves some attention. Dr. Tran also argues that he is entitled to summary judgment because Gabb cannot show he suffered any harm from the delay in providing him treatment to relieve his painful tooth. In truth, Gabb suffered three months of pain and was facing at least four more months of it before he could have the restoration procedure to relieve it. A reasonable jury could find that Gabb's "unnecessarily prolonged pain" constituted enough harm to support his claim. *See Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (citing *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007)). The Court makes this clear to underscore that this is not the basis for granting summary judgment for Dr. Tran.

2. Dr. Litherland

It appears that Dr. Litherland might have played a role in Gabb's not seeing a dentist immediately after he fractured his tooth. Dr. Litherland took Family and Medical Leave Act leave in early April, right around the time Gabb fractured his tooth on April 7, leaving no dentist at the facility. Nevertheless, no jury could find Dr. Litherland liable for the initial delay in Gabb's examination. Dr. Litherland is not personally responsible for the inmates he serves when he is on official leave. It would be Wexford's responsibility to supply Lawrence CC with adequate dental services to cover for Dr. Litherland's absence.

Dr. Litherland saw Gabb on two occasions: August 13, 2019, and August 30, 2019. At the first visit, Dr. Litherland noted Gabb's continuous complaints of tooth pain and threatened to pull Gabb's tooth if he did not stop complaining even though restoration was possible. While this may indeed have been a callous threat, it does not amount to deliberate indifference. On the contrary, it shows Dr. Litherland was well aware of Gabb's pain and offered him the most

expedient way to stop it—extraction—in light of the months Gabb would have to wait for a restoration.   His threat to pull Gabb's tooth without permission if he did not stop complaining was rendered innocuous by Gabb's written consent to extraction on March 30, 2019.   And he did respond to Gabb's pain by prescribing him ibuprofen.

In Gabb's second visit to Dr. Litherland, Gabb consented to the extraction, and Dr. Litherland performed it and prescribed ibuprofen for Gabb's pain.   No evidence suggests that before the extraction of the tooth, it was in any worse condition that it was in when it was newly fractured.

No reasonable jury could find Dr. Litherland responsible for any delay in Gabb's treatment.   He recognized Gabb's pain and responded with prescriptions for pain medication and an inartful suggestion that extraction would provide a more efficient resolution of the pain.   He ultimately extracted Gabb's tooth with Gabb's permission, bringing to a conclusion the pain that Gabb suffered from his broken tooth.   No reasonable jury could find that Dr. Litherland was deliberately indifferent.   Therefore, the Court will grant summary judgment in his favor.

       3.     <u>Abell and Mills</u>

Gabb seeks to hold Abell and Mills, dental assistants, responsible for the wait time for a tooth restoration and his pain in the interim.   He claims they should have acted to get additional pain medication or to access restoration services for Gabb.   He relies on caselaw recognizing that while nurses can generally defer to a physician's decision, "they have an independent duty to ensure that inmates receive constitutionally adequate care."   *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015).   "[A] nurse confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing the nurse's concerns with the treating physician

or by contacting a responsible administrator or higher authority." *Id.*

With one exception, there is no evidence of any "inappropriate or questionable practice" by Dr. Tran or Dr. Litherland. The one possible exception is when Dr. Litherland threatened to extract Gabb's tooth if he kept complaining about it. Mills joined in with Dr. Litherland in that threat. However, as noted above, the threat was dissipated when Gabb consented to extraction in writing on March 30, 2019. Other than that, Dr. Tran's and Dr. Litherland's conduct was not inappropriate or questionable, and there is no evidence that Abell or Mills had information about Gabb's condition beyond what the doctors knew that would tip them off to a questionable practice. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (nurse had more frequent and recent contact with inmate than doctor did). The dentists placed Gabb's name on a waiting list to see an outside dentist, but there was no emergent condition for which they might place him higher on the list. Otherwise, they had no control over the wait for Gabb to get to the top of the list. The dentists also prescribed pain medication within their medical judgment. There was no inappropriate or questionable behavior to which Abell and Mills could object or report to an administrator. Abell and Mills were not deliberately indifferent to Gabb's needs and are entitled to summary judgment.

      B.    <u>Wexford</u>

Gabb asserts that Wexford had a widespread practice that violated his constitutional rights, *see Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020), namely, a policy of delaying treatment and encouraging tooth extraction over restoration as a cost-saving measure. Wexford points to its express policy regarding dental treatment in Dr. Litherland's absence: if an inmate came to the dental department with an emergency when there was no dentist, he was sent to the medical department for evaluation to see if they could treat him and, if they could not, to send

him outside the facility for emergency services.

A private corporation like Wexford is liable under § 1983 to at least the same extent as a municipality. *Hildreth*, 960 F.3d at 426; *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378-79 (7th Cir. 2017) (*en banc*). A municipality may not be held vicariously liable for actions of its employees under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). However, it can be liable under § 1983 when the institution itself, by its own actions, *caused* the deprivation of rights. *Monell*, 436 U.S. at 691-92; *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1125, (2021) (mem.); *Glisson*, 849 F.3d 372 at 381.

A municipal action occurs where (1) the municipality had an express policy calling for a constitutional violation, (2) the municipality had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law, or (3) if a person with final policymaking authority for the municipality caused the constitutional violation. *Monell*, 436 U.S. at 694; *J.K.J.*, 960 F.3d at 377; *Glisson*, 849 F.3d at 379. A municipality is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the "moving force" behind the constitutional violation. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *J.K.J.*, 960 F.3d at 377. The plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan Cty.*, 520 U.S. at 404; *see Monell*, 436 U.S. at 694; *J.K.J.*, 960 F.3d at 377.

The failure to act can be tantamount to a "policy of inaction" where the municipality "has notice that its program will cause constitutional violations." *J.K.J.*, 960 F.3d at 379-80 (citing

*Connick v. Thompson*, 563 U.S. 51, 61-62 (2011); *Bryan Cty.*, 520 U.S. at 410); *see Glisson*, 849 F.3d at 382. Notice can come from a risk that is "known or obvious," that is, where the need was obvious and likely to result in a constitutional violation if not addressed. *J.K.J.*, 960 F.3d at 380 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). And the failure to address a known or obvious risk can also support the inference that the failure was the cause of any harm resulting. *J.K.J.*, 960 F.3d at 384.

There is no evidence from which a reasonable jury could find Wexford encouraged its dentists to promote extraction over restoration as a cost-saving measure. However, the same is not true for a policy of delaying dental treatment by having inadequate dental resources.

Substantial delays in dental restoration were a result of Wexford's dental staffing decisions for Lawrence CC when Dr. Litherland was on leave. Wexford provided no dentist at the facility for several weeks in April 2019, and thereafter, provided outside dental restoration services to any inmate who could wait three to seven months. For Gabb, this was tantamount to no restoration services at all. Indeed, it appears he caved to months of pain with no sign of relief on the horizon when he agreed to an extraction.

A reasonable jury could find that the need for dental restoration services for Gabb and the other inmates at Lawrence CC while Dr. Litherland was on leave was obvious to Wexford, and that Wexford's failure to adequately address that need was likely to result in a constitutional violation. A jury could find that Wexford's plan to send inmates with dental needs to the medical department—likely with minimal dental training—was clearly insufficient and/or was not actually implemented. After all, despite requesting dental treatment when he broke his tooth on April 7, 2019, Gabb was not sent to the medical department for evaluation. Instead, he waited more than three weeks until he could be seen by Dr. Tran on May 1, 2019. Then he was

told he must wait three months for dental restoration services, then when the three months had passed, he was told that the list had actually grown to four months.  A reasonable jury could find that Wexford knowingly failed to provide timely and adequate dental services and that such failure caused Gabb unnecessary pain and, ultimately, to sacrifice his tooth.

## V.     Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Docs. 80 & 81).  The motion is granted as to Dr. Tran, Dr. Litherland, Mills, and Abell and as to Wexford based a policy promoting extractions over restorations.  The motion is denied as to Wexford for a policy of having inadequate dental services available;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

By separate order, the Court will set a telephone status conference to select dates for the Final Pretrial Conference and Trial.

**IT IS SO ORDERED.**
**DATED:   October 5, 2023**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**